## COMMENT ON THE QUALIFICATIONS OF A CANDIDATE
## FOR PUBLIC OFFICE.

Court of Appeals for Cuyahoga County.

EARLE A. FOSTER v. MAYO FESLER AND TEN OTHERS.*

Decided, May 22, 1916.

*Libel and Slander—Publications Concerning Candidates for Public Office—Criticism Which is Truthful and Wholesome Not to Be Discouraged—But Defamatory Matter Can Not be Defended on the Ground of Privilege.*

1. Temperate and truthful criticism of the career, ability and fitness of a candidate for public office, and considerate and informing advice to voters as to the best manner in which they can exercise their right of franchise, where given in a proper spirit and for justifiable ends, is a wholesome thing and should not be discouraged in a government bottomed on healthy public opinion.
2. For a civic league to publish of and concerning a candidate for office that "His business and court record is such that, in our opinion, he is entirely disqualified for the Legislature; he should be defeated," is not libelous *per se.*

*Cornelius Maloney,* for plaintiff in error.
*Ford, Snyder & Tilden,* contra.

GRANT, J.

Error to the court of common pleas.

The plaintiff sued the defendant in an action for libel. The cause was brought to a trial in the court of common pleas upon the fourth amended petition, to a jury.

An objection was made to the hearing of any evidence on the part of the plaintiff, on the assigned ground that the petition alleged no sufficient facts to constitute a cause of action against the defendants, or any of them. The objection was sustained.

The defendants then moved for a dismissal of the action. The motion was allowed. The defendants thereupon moved for

*Affirming *Foster* v. *Fesler,* 19 N.P,(N.S.), 12,

a judgment in their favor for their costs made. This motion also was granted. The plaintiff moved for a new trial. The motion was denied. The plaintiff prosecutes this proceeding to obtain a reversal of the judgment named, 'alleging error in the action of the trial court in the respects mentioned, prejudicial to his rights.

The petition upon which the plaintiff's action was attempted to be brought to trial declared as upon a false and malicious libel perpetrated by the defendants, it was said, upon and against the plaintiff, who was at the time a candidate before the electors of his county for nomination to the office of member of the General Assembly of Ohio.

The defendants were charged, collectively, with being the "executive board" of the Civic League of the city of Cleveland, a body whose function or service, if it is understood, was to furnish the public, gratis, with advice and information concerning the qualities and fitness of aspirants for office, the particular information and counsel said to be libelous in this instance being published by them, or at their instigation or instance, in the Cleveland *Leader*, a newspaper.

The libel, if such it was, is said to have lurked in the following language of the publication: "His business and court record is such that, in our opinion, he is entirely disqualified for the Legislature; he should be defeated."

It is contended on the part of the plaintiff that these words are of themselves, and without more, libelous.

Whether they are so or not it is our business now to inquire and determine. Their libelous character and quality, as deduced by the pleader and embodied in the innuendos annexed to them by the petition, are of the tenor and effect that they would be understood by readers of them to mean, and were intended by the defendants to mean, that the plaintiff's record in the courts and in his business was evidence of his depravity and want of integrity, to such an extent as totally to unfit him for the duties of the office to which he aspired.

Another form which our present inquiry must take is, whether the meaning thus attributed to the published matter is justified

by the words themselves; for, of course, the language is not to be broadened by innuendo beyond its plain and ordinarily accepted import, in the absence of circumstances calling for a different meaning to be imputed to it, and no such circumstances are apparent in this case.

We quite agree with the contention that while a candidate for public office necessarily and properly puts his own record in issue, in order that the people may be honestly served, he does not thereby become a target for indiscriminate slander from the various mud-batteries always to be encountered on such occasions. A man's rights as a citizen are not submerged in the slimy pools of partisan politics. His candidacy for the suffrage of his fellows is, or should be, an honorable thing; and it does not authorize letters of marque and reprisal to be issued against him, nor denunciation of him as a legal leper. His reputation ought to be even more valuable to him in that relation, and it may not be falsely and without cause assailed with impunity by the tongue of falsehood or the impassive types of libel. In such case he is entitled to the redress which the law gives persons thus aggrieved, whether his detractors are officious intermeddlers or syndicates of saints posing as the guardians of the public welfare, uplifters at large, one of the two who went up to the temple to pray (not the publican), or just plain campaign liars.

On the other hand, temperate and truthful criticism of his history, his ability and fitness for the place to which he aspires, considerate and informing counsel by those qualified to give it, to the voters whose advantages for coming at the truth of the matter are less influential than theirs—such advice, we say, given in a right spirit and for justifiable ends, is a wholesome thing in a government bottomed on healthy public opinion, and is not to be discouraged.

To find out in which category the publication complained of falls, we are to examine, carefully, the language used, and find from it, if we can, its real meaning as this would strike the ordinarily reasonable man who, under the circumstances, might have read it. Upon the result of that inquiry we must determine whether the words are or are not libelous of themselves.

In order to be so, they must fairly and obviously impute to the party complaining of them, first, an offense indictable at law, involving in its perpetration moral turpitude or visitable with an infamous punishment; second, an offensive disease or other disgrace of a social character, importing the exclusion of its victim from reputable society; third, conduct which, if true, would be calculated to injure him in his calling, business trade or profession.

For present purposes, we may at once exclude from this consideration the last two of these classifications, and limit the inquiry to the first of them.

Accordingly, we are told by the petition that the avocation of the plaintiff is that of a plumber.

It does not follow, necessarily, that because a man is a plumber he is plumb. The word has a different derivation. In fact and according to common and daily observation, many people maintain that many plumbers are—to use the language of a former schoolmaster of ours—"on the contray, quite the reverse." Their methods of doing their work, and especially in the rather important matter of charging for it, are roundly denounced by the uncharitable, and by some who are charitable. If the half that is commonly said of plumbers and the ways of their craft is to be believed, then many plumbers would, if elected to the Legislature, be uninfluential members, to say the least of the matter, and, in that view and that sense of the word, be in a degree "disqualified for the Legislature." Their trade name would in that respect be against them. Is it quite certain that the words used in the publication before us, so far as they purport to go to the plaintiff's "business record," when fairly and reasonably read, mean any more than that, to an intending voter whose only wish is to cast his ballot for the best candidate and to do so intelligently and advisedly? If they do not, then the quality of this part of the publication is not libelous of itself and the charge in that respect is not made out.

Or, the words may reasonably be considered in their proper relation to the successes or failures of the plaintiff in his busi-

ness. Non-successes in business, no matter how pronounced or oft repeated they may have been, are, unhappily, no deterrent to running for office by the man who has achieved them. It is the infirmity of many men—including, we are pained to believe, most seekers for office—that a career of the most ghastly failure in their private affairs is just the thing to fit them to manage the affairs of the public. A half-baked accident who breaks down in business vainly imagines himself just the man to transact the business of everybody else, and seeks votes accordingly. Against such candidacies voters who are not informed should have the counsel of those who are.

It may be that the words of the publication imputing disqualification to the plaintiff have this significance. Of themselves, they do not import more or a worse deduction than that. Neither of the suppositions to which we have so far referred charges upon the plaintiff a crime, or even an offending against common personal or business morality, that we can see. Noise and clamor about plumbers, however inconsiderate or unfounded, derision of the perpendicularity of their charges, may very seriously cripple a plumber's influence and usefulness as a member of the Legislature, but do not impute to him, even remotely, as it seems to us, an indictable offense or import moral turpitude in his conduct. And no more does the severest animadversion of his unsuccesses in business, although the fact of them may beget an able-bodied suspicion that he will not be likely to do a service to the public more usefully than he has been doing for himself, and this suspicion in turn may reasonably engender an opinion which may, with entire propriety, be conveyed to the voters, that he has not the proper qualification for the office which he asks them to give him.

So that, as thus measured, the criticism of the plaintiff's business record, embodied in the alleged libelous matter, is not obnoxious to the conclusion charged against it, and does not fulfill the canon of what in our law amounts to a libel *per se,* as appears to us.

The conclusion as to the result to be come at from the plaintiff's charged "court record," as contained in the publication, is

of greater difficulty, perhaps, or probably. A discriminating analysis of the language in this respect, however, may serve to clear up the obscurity.

Not every court record is a criminal record, happily; and on the civil side our courts are full of litigants, brought there from various motives and for different reasons. Some men are inherently quarrelsome, and so get into trouble often, and the court is the resort of themselves or their neighbors as a sort of safety-valve to straighten out their troubles or settle their fights. Others are chronically in financial straits, or habitually refuse to pay their debts till sued. Others develop litigious habits, seek trouble with their customers, and, of course, find it, and reach the courts for settlement of their rows.

It is quite possible, and indeed quite a frequent thing, within common knowledge, for men to have a court record in some of the respects mentioned, and we can not say that plumbers, more than other men, are exempt from the infirmities or the misfortunes which may and do result in that kind of a court record. Perhaps as often as any other class are they accused of charges bordering on the extortionate. A newspaper last winter, noting the arrival of the first strawberries in January, vouchsafed the single comment that nobody but plumbers were buying them. The accusation in any case may be unjust, but that it is commonly made illustrates the point in hand; and many have made merry at the poor plumber's expense in this regard. A neighbor of mine, inveighing against his plumber's bill, remarked that the latter should have been a cavalryman—he was so good on a charge. The astute philosopher who was able to transform a well known proverb into "A little widow is a dangerous thing," is supposed to have translated "It never rains but it pours" into "It never drains but it costs." Still plumbers are entitled to be protected in life, limb, property and reputation, as well as all others. That some make them objects of derision does not turn them into legal outcasts.

Such a court record as we have instanced imports no crime, suggests none. It involves no inference of moral turpitude. It does not tend to disgrace the craft who are parties to it. On

the other hand, it may unfit a party to it for the useful discharge of a legislator's duties. Uncharitable people—and indeed prudent people who desire useful service at the hands of their chosen law makers and to have none but men of weight, influence and reputation in that position—all good citizens in fact—will say, and rightly say, that a man much in courts—whether from choice or necessity matters not—must be shorn of much of the power and opportunity for good and effective work as their representative in the Legislature. And so regarding the matter, it is the right, and it may be the duty, of men conversant with the facts and the records, to counsel voters who are not otherwise informed in that respect. We can see no impropriety in it, and much less can infer from it a wanton and malicious desire to injure the reputation of one who, by seeking votes, puts that reputation, measured by his record in courts or out of them, before his wished-for constituents into the limelight of public scrutiny and judgment.

May not, it is asked again, the publication complained of here, be as fairly and naturally and reasonably read in this light, as in the harsher and more censorious aspect of imputed criminality or disgrace? And would not the common sense of the people, which Guizot so finely called "the genius of humanity," so read and apply it?

We think that the people who would be likely to read and heed the counsel which the defendants undertook to give them in the publication—men in the habit of reading such things and capable of reading them soberly and thoughtfully, would be likely also to read them in the light of a charitable rather than a sinful construction of the words employed to impart the advice tendered for their information and guidance in the duties of free electors.

But, it will be asked, may they not read them in the other view? Beyond question there may be men who would so read them. The stormy petrels of society would so read them, men to whom, like Sterne's Smelfungus, everything looks green, would see in an adverse criticism of one's business and court record only the inference of criminality and the devious trail

of a scoundrel and a crook, and from their constitution could look at the charge in no other light. Undoubtedly there are such men; but they are, fortunately for the common well-being, in a sad minority, and do not furnish the just standard of judgment upon which the public desire to proceed in voting men into or out of office, or upon which customarily, as we believe, they do proceed, or we should proceed.

Even if the words charged as being defamatory could be regarded as reasonably importing a criminal paper record, and if it is also held that this in turn foreshadows an infamous punishment—on paper, also—it is difficult to see how, on that account, they could be considered as in themselves actionable—no element of moral turpitude being apparent from the language used—since in our time there is practically no real penalty annexed to many a committed crime—perhaps most of them—the criminal being customarily golden-ruled and let go with a speech of half apology and half compliment, the prevailing tone to-day, both as to law-makers and supposed law-enforcers, being distinctly deferential to lawlessness.

The result of our examination of the words alleged to be libelous here, following the analysis to which we have attempted to subject them, is that they are of themselves not reasonably susceptible of the defamatory meaning charged, and we so find and hold. They purport on the face of them to rest on opinion only, and such opinion being, to our apprehension and according to the rule of right reason, to the innocuous purport mentioned.

If we are right in so finding, then the court below was right in refusing to hear the evidence tendered; because in that case the question is one of law for the court to solve, and there is nothing to be submitted to a jury. The rule as announced in *Hays* v. *Mather*, 15 Ill. App., 30, and adopted in *Newell on Slander and Libel*, Section 645, is as follows:

''Where the words of an alleged libelous publication are not reasonably susceptible of any defamatory meaning, the court is justified in sustaining a demurrer to the declaration. But if they are reasonably susceptible of two constructions, the one innocent and the other libelous, then it is a question for the jury which construction is the proper one.''

We are of the opinion that the words here are not capable of the meaning ascribed to them by the innuendo annexed to them in the petition, and that their natural and normal significance does not justify an inference of a crime indictable at law, punishable infamously, and importing moral turpitude. Reasonably construed, they amount to no more than the fair and temperate criticism which, by becoming a candidate, the plaintiff invited and which he ought to bear. By them he has not, as we look at the matter, been libelously assailed. And the voting public were entitled to the saving warning intended by the publication, if the non-criminal record of the plaintiff as a man of business and a litigant warranted it. "By their fruits ye shall know them" is still healthfully true; and we are to remember that it is the plaintiff alone who is insisting that the fruits are forbidden fruits. The defendants and we are more charitable in this respect than he is. He says that his townsmen, the defendants, charged him with being a criminal. We say not.

It follows from this that the intent of the defendants in causing the publication to be made is immaterial. It is said in *Mosier* v. *Stoll*, 119 Ind., 244, that if the publication does not contain a libelous charge, no action will lie, no matter what the author intended. But in the case at bar the motives of the defendants unquestionably were proper. They thought they were doing a real service to the public in making the publication, and it is not apparent to us that they were not.

We have endeavored to reach a conclusion in this case from premises founded in principle. The law applicable is so well settled that it need not be further discussed. It is probably not necessary for us to say that if the published matter were of itself actionably defamatory, the charge could not be met on the ground that it would be privileged.

Upon the best consideration we have been able to give the question before us, and having what we trust is a mindful regard for the rights of all the parties, we are satisfied that no error injurious to the plaintiff is to be found in the record under review, and the judgment complained of is, therefore, affirmed.

MEALS, J., and CARPENTER, J., concur.